IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Patricia Ann Beaton, ) | | C/A No. 0:10-193-PJG |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | **ORDER** |
| ) | | |
| Michael J. Astrue, ) | | |
| Commissioner of Social Security, ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 DSC and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Patricia Ann Beaton ("Beaton"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB").

### ADMINISTRATIVE PROCEEDINGS

On May 12, 2006, Beaton applied for DIB, alleging disability beginning February 26, 2006.[1] Beaton's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 26, 2008, at which Beaton, who was represented by counsel, appeared and testified. The ALJ, after hearing the testimony of a vocational expert, issued a decision on October 31, 2008 denying benefits and concluding that Beaton was not disabled. (Tr. 8-16.)

---

[1] Beaton initially alleged disability beginning February 24, 2006, but amended her alleged onset date by letter dated August 22, 2008, prior to her hearing before the ALJ.



Beaton was forty-six years old at the time of her alleged disability onset date. (Tr. 128.) She has a high school education and past relevant work experience as an administrative assistant, school bus driver, manager, and sales associate. (Tr. 122, 126, 132.) Beaton alleges disability since February 26, 2006 due to arthritis in her lower back, knee problems, left wrist problems, high blood pressure, and diabetes. (Tr. 121.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since February 26, 2006, the amended alleged onset date (20 CFR 404.1571 *et seq.*).
   * * *
3. The claimant has the following severe impairments: degenerative joint disease of the bilateral knees status post total knee replacement and residual effects from C4-7 fusion (20 CFR 404.1521 *et seq.*).
   * * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
   * * *
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with a sit/stand option at will (30 minutes at a time); occasional postural limitations; no climbing; frequent reaching; no overhead reaching; frequent handling; and requiring the use of a cane.
   * * *
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
   * * *
7. The claimant was born on [REDACTED], 1960 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

       transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

                                            *  *  *

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 26, 2006 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 10-16.)

On December 8, 2009, the Appeals Council denied Beaton's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

    (1) whether the claimant is engaged in substantial gainful activity;

    (2) whether the claimant has a "severe" impairment;

    (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4) whether the claimant can perform [her] past relevant work; and

    (5)    whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d

at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Beaton raises the following issues for this judicial review:

I.  The Administrative Law Judge (ALJ) erred by disregarding the opinion of plaintiff's primary treating physician that her residual functional capacity was reduced to an extent that would preclude her from engaging in substantial gainful employment.

II. The ALJ's decision is not supported by competent substantial evidence in plaintiff's case.

(Pl.'s Br., ECF No. 14.)

## DISCUSSION

Beaton argues that, when determining her residual functional capacity ("RFC") and her ability to engage in sustained full time employment, the ALJ erred in giving little weight to the opinion provided by Dr. Sarah Stapleton, Beaton's treating physician. Beaton contends that Dr. Stapleton's opinion was supported by Beaton's testimony, which the ALJ failed to properly credit, and the medical evidence. Therefore, the court will first examine Beaton's argument that the ALJ erred in discounting her testimony regarding her pain and difficulty functioning.

**A.   Beaton's Credibility**

Beaton argues that the ALJ relied solely on objective medical evidence to reject Beaton's testimony concerning her symptoms and the limiting effects of her pain in violation of the law in this circuit. (See Pl.'s Br. 8-9.) According to Beaton, once she established through objective medical

evidence the existence of a medical impairments which could reasonably be expected to produce her pain or other symptoms, she should be allowed to rely on subjective evidence to establish the intensity and limiting effects of the pain.

Beaton's argument rests on an apparent misunderstanding of the law of this circuit. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue,[2] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects her ability to work." Id. In making this determination, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are *inconsistent* with the available evidence, *including objective evidence* of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause

---

[2] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

the [symptoms] the claimant alleges she suffers." Id. (emphasis added). The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

During the hearing, Beaton testified to severe functional limitations, including chronic pain and extreme inactivity. For example, Beaton stated that she spends most of her day lying down (Tr. 30), that she requires a cane to ambulate and that standing up and sitting down causes her "excruciating" pain (Tr. 25), that her body "shuts down" when she gets over exhausted (Tr. 27), that she has radiating pain in both arms (Tr. 28), that she does not do the housework or yardwork (Tr. 32), that she can lift no more than a half gallon of milk and is unable to carry a ream of paper (Tr. 33). She also testified that she is unable to bend at the waist, climb steps or a ladder, or reach anything on a shelf (Tr. 41), and that she leaves the house to go to church once a month (Tr. 42) and occasionally to shop with her sister (Tr. 46).

In this case, the ALJ found that Beaton's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent



with the above residual functional capacity assessment." (Tr. 13.)  In reaching this conclusion, the ALJ expressly considered several factors in discounting the credibility of Beaton's subjective complaints.  Specifically, the ALJ found that

> while the claimant testified that she suffers from chronic pain, the medical evidence of record fails to reveal that the claimant was ever in any acute distress and examinations were essentially benign following the claimant's surgeries.  Although the claimant has undergone surgery in her cervical spine and knees, which would normally weigh somewhat in the claimant's favor, the record reveals that these surgeries have been generally successful.  While the claimant alleges extreme inactivity (spending most of her time lying down), a review of the evidence of record fails to reveal any signs of atrophy or similar findings.

(Tr. 13.)

Upon a thorough review of the record as a whole, the court finds that the ALJ did not err in his analysis in determining the credibility of Beaton's subjective complaints.  See Craig, 76 F.3d at 595.  In determining that Beaton's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Beaton's subjective complaints in conjunction with the medical evidence and the other evidence of record.  Accordingly, Beaton has failed to demonstrate that the ALJ erred in finding that Beaton's subjective complaints are inconsistent with the record.  See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling").  Moreover, the court may not substitute its judgment for the ALJ's.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to

re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination as to Beaton's credibility is not supported by substantial evidence or controlled by an error of law.

**B.     Dr. Stapleton**

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter, 993 F.2d at 35. Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Beaton argues that the ALJ erred because Dr. Stapleton's opinion "was consistent with the record as a whole, including reports of the other treating medical sources, and the testimony of Plaintiff." (Pl.'s Br. at 8, ECF No. 14 at 8.) Beaton also points out that at the time Dr. Stapleton

issued her opinion, she had been treating Beaton for over three years, serving as her primary physician and coordinating with her other specialists, and that there is no evidence from a treating or examining physician which would contradict Dr. Stapleton's opinion. Finally, Beaton appears to argue that in discounting Dr. Stapleton's opinion, the ALJ erred in failing to find that Beaton's cerebrovascular accident (stroke) was a severe impairment.

Upon a thorough review of the record as a whole, the court finds no error. As the ALJ observed, in August 2008 Dr. Stapleton restricted Beaton "to no lifting and carrying; sitting, standing and walking up to one hour; no pushing/pulling movement; no climbing, balancing, gross manipulation, fine manipulation, bending/stooping, and reaching; no work around hazardous machinery; and rarely operate motor vehicles." (Tr. 14, 310, 335.) Dr. Stapleton also opined that Beaton would miss more than four days per month due to her impairments. (Tr. 14, 335.) Dr. Stapleton indicated that the basis for these restrictions was that Beaton " 'has had a stroke (with) weakness (right) (lower extremity); left hand pain (due to) carpal tunnel.' " (Pl.'s Reply Br. at 1, ECF No. 21 at 1) (alterations in original) (quoting Dr. Stapleton's Attending Physician's Statement, Tr. 335).

The ALJ found that there was "no evidence of any significant clinical findings to support this opinion" and because the evidence of record did not support Dr. Stapleton's opinion, he afforded it little weight. (Tr. 14.) In reaching this conclusion, the ALJ discussed aspects of Beaton's medical records that were inconsistent with Dr. Stapleton's conclusions. Specifically, the ALJ noted that Beaton has a history of bilateral knee pain and had left knee arthroscopic surgery in September 2005, right knee arthroscopic surgery in October 2005, left total knee arthroplasty in May 2006, and right

total knee arthroplasty in September 2006. However, the ALJ found that her medical records revealed that, postoperatively, Beaton was doing very well, observing that

> in May 2006, the claimant was reported to be doing very well with near full extension and flexion; in June 2006, she was doing very well with almost full extension and flexion and no instability; in August 2006, she continued to do well; in October 2006, she was doing fantastic with full extension, normal neurovascular function and was ambulating without an assistive device; and in December 2006, she continued to do well with good strength and no instability.

(Tr. 13.) The ALJ also noted that Beaton had three-level cervical discectomy and fusion in August 2005. However, the ALJ again observed that Beaton's postoperative medical records revealed that the symptoms in Beaton's shoulders, arms, and hand had completely resolved. The ALJ pointed out that Beaton's treatment had been relatively conservative since her onset date; in February and May 2006, treatment records from Dr. Stapleton revealed that Beaton "was doing markedly better and great since surgery;" in February 2006, Beaton "was found to have normal muscle tone and bulk, 5/5 strength throughout, intact sensation, normal gait and 2+ deep tendon reflexes;" Beaton reported in April 2008 that she was feeling great; and in August 2008 examination was essentially benign other than slightly decreased right leg strength measuring at 3/5. (Tr. 13-14.)

To the extent that Beaton's argument is based on the premise that the opinion of treating physician is automatically entitled to controlling weight or at least great weight, the court observes that as stated above, the treating physician rule does not require that a treating physician's opinion be given controlling weight. Rather, it is entitled to controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Otherwise, "it should be accorded significantly less weight." Id. Further, if controlling weight is not afforded, the treatment

relationship between the physician and the applicant is one of several factors that are considered in evaluating a treating physician's opinion.

In this case, the ALJ found that Dr. Stapleton's opinion was not supported by clinical evidence and therefore discounted the opinion. In arguing that this decision was in error, Beaton points to selective medical evidence which may support it. For example, Beaton argues that the following evidence supports the limitations opined by Dr. Stapleton as well as a finding that Beaton's cerebrovascular accident (stroke) was a severe impairment: a CT scan dated May 3, 2005 revealing "volume loss of the cerebellum and especially the brainstem" indicative of a "multisystem atrophy syndrome," which Beaton argues constitutes a significant clinical finding (Pl.'s Br. at 9-10, ECF No. 14 at 9-10); a medical note from April 13, 2005, indicating that Beaton had done everything with her left hand since her stroke; and an August 2, 2005 medical record noting that she had a "1-year history of neck and back pain with radiation bilaterally, predominately on the left side" and past medical history for a stroke in 1994 (Pl.'s Reply Br. 2, ECF No. 21 at 2).[3] While Beaton may point to some evidence to support Dr. Stapleton's opinion, the court finds that based on the evidence discussed above, Beaton has failed to show that the ALJ's evaluation of Dr. Stapleton's opinion is unsupported by substantial evidence or reached through the application of an incorrect legal standard. See Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527; see also Blalock, 483 F.2d at 775 (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). Similarly, Beaton has failed to demonstrate that the ALJ's determination that Beaton's stroke was not a severe impairment was unsupported. See 20 C.F.R.

---

[3] The court observes that these records appear to be before Beaton's surgeries in 2005 and 2006. Further, Beaton's work history appears to reveal that she engaged in substantial gainful activity until February 2006. (See Tr. 10, 22-23, 99, 112, 132, 171.)

§ 404.1520(c) (stating that a severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities.").

With regard to Beaton's contention that the opinions of two non-examining, non-treating physicians should have been given minimal weight because they did not have Beaton's entire medical file as these opinions were issued in July and September 2006, the court finds that based on the record before the court reversal is not warranted on this ground. The opinion reveals that the ALJ considered the reports by two state agency examiners. On July 10, 2006, Dr. Dale Van Slooten completed a physical residual functional capacity assessment, concluding that Beaton (1) could occasionally lift and/or carry twenty pounds and do so frequently with ten pounds; (2) could stand and/or walk about six hours in an eight-hour workday with normal breaks, and sit about the same; (3) was unlimited in her pushing and pulling ability; (4) could occasionally climb ramps or stairs but never ladders, ropes, or scaffolds; (5) could occasionally kneel, crouch, and crawl; (6) could frequently stoop and kneel; and (7) had no visual, communicative, or environmental limitations. (Tr. 293-300.)  On September 19, 2006, Dr. Charles Fitts completed the same assessment after independent review of the file and reached the same conclusions. (Tr. 301-08.)

The ALJ considered these opinions; however, after review of the record, the ALJ stated that he "impose[d] more restrictions upon the claimant's lifting requirement due to the degenerative nature of her knee condition, by limiting her to sedentary work activity."[4] (Tr. 14.) Beaton argues that the ALJ erred in relying on the opinions from the state agency physicians over the opinion of

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Dr. Stapleton. In support of her argument, Beaton points out that the state agency physicians did not have the benefit of Beaton's records from February 19, 2007 to August 20, 2008. Further, relying on an excerpt from SSR 96-6p, Beaton argues that since the state agency physicians did not have a complete case record with a medical report from a specialist, these opinions should not have been given greater weight. (Pl.'s Br. at 11-12, ECF No. 14 at 11-12; Pl.'s Reply Br. at 4, ECF No. 21 at 4.)

Based on a review of the record and the ALJ's opinion, it is clear that the ALJ considered the entire record in evaluating Beaton's application for benefits and reduced the weight given to the state agency opinions accordingly. (See Tr. 13-14) (noting that in April 2008 "the claimant reported that she was felling great" and "[e]xamination was essentially benign in August 2008, except for slightly decreased right leg strength (3/5)"). Further, although the excerpt of SSR 96-6p that Beaton relies on appears to limit the circumstances in which a state agency opinion can be given greater weight than the opinion of a treating physician, when read in its entirety, it is clear that that instance is but one example of when such weight may be accorded.[5] Accordingly, Beaton has failed to demonstrate

---

[5] The relevant portion of SSR 96-6p provides as follows:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. *For example*, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or phychological [sic] consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6p (emphasis added).

PJG

that the ALJ erred in his evaluation of these opinions.  See 20 C.F.R. § 404.1527(f)(2) (providing that the ALJ must explain the weight he gives to the opinions of agency doctors, which are evaluated using the same factors used for other medical sources); SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner).

**ORDER**

Based upon the foregoing, the court finds that Beaton has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 9, 2011
Columbia, South Carolina